**EMPLOYERS CASUALTY COMPANY, Appellant,**

v.

**Mary Jane HUTCHINSON, Appellee.**

No. 3–90–036–CV.

Court of Appeals of Texas, Austin.

Aug. 14, 1991.

Rehearing Overruled Sept. 25, 1991.

Mahon B. Garry, Jr., Bankston, Wright and Greenhill, Austin, for appellant.

Edward Berliner, Law Offices of Edward Berliner, Austin, for appellee.

Before POWERS, ABOUSSIE and KIDD, JJ.

KIDD, Justice.

This is a workers' compensation death case. Mary Jane Hutchinson ("Plaintiff") filed suit against Employers Casualty Company ("Employers"), seeking workers' compensation benefits for the death of her son, George W. Hutchinson ("decedent"), as a result of an automobile accident. The sole question presented to the jury was whether, at the time of the automobile accident, the decedent was within the course and scope of his employment for Ford Motor Credit Corporation ("Ford Credit"). The jury answered the question in favor of plaintiff. Employers appeals the adverse judgment to this Court. We affirm the judgment of the trial court.

## FACTUAL BACKGROUND

Decedent was employed by Ford Credit where he served as an assistant customer service representative. His duties involved handling and collecting delinquent accounts. He had the authority to work files in the field and to repossess vehicles, which he had done on a number of occasions.

During the week before his death, decedent informed his co-workers at Ford Credit that he was attending a family reunion in the Horseshoe Bay area over the weekend. He volunteered to work any delinquent files Ford Credit had in the area. Calvin Zanders, a customer-service representative superior in rank to decedent, had a badly delinquent account in Granite Shoals, which is near Horseshoe Bay. Zanders assigned the delinquent file to decedent before the weekend reunion with the understanding that decedent would work the file after the reunion. Decedent told his roommate before leaving for the reunion that over the weekend he was going to pick up some delinquent payments from a woman in Mar-

ble Falls, which is located near Granite Shoals.

Decedent attended the family reunion in Horseshoe Bay on Saturday, June 20, and Sunday, June 21. The last event of the reunion was a Sunday morning brunch at Richard Prigmore's house in Horseshoe Bay. During the brunch, decedent told Prigmore that he had to go to Granite Shoals on business. Decedent also told his mother that he could not follow her back to Austin because he had to go service an account for his employer in the Granite Shoals area following the brunch. Decedent left the brunch shortly after noon. Decedent was killed when a drunk driver struck decedent's automobile. The collision occurred on Highway 1431 between Marble Falls and Granite Shoals. It is undisputed that the point of collision was not on any direct or convenient route back into Austin.

## THE CONTROVERSY

Plaintiff filed suit in district court seeking workers' compensation benefits for the death of decedent. Plaintiff contended that decedent was within the course and scope of his employment with Ford Credit when he died. Employers denied liability.

To recover workers' compensation death benefits, plaintiff had to show that, at the time of the fatal injury, decedent was "engaged in or about the furtherance of his employer's affairs or business." *See* 1959 Tex.Gen.Laws, ch. 355, § 1, at 780 [Tex. Rev.Civ.Stat.Ann. art. 8309, § 1, since repealed]. In addition, because the fatal injury occurred during the course of automobile travel, the plaintiff had to establish that the decedent met one of the criteria established by art. 8309, § 1b, entitled "Transportation or travel as basis for claim for injury." Article 8309, § 1b provides:

Unless transportation is furnished as part of the contract of employment or is paid for by the employer, or unless the means of such transportation are under the control of the employer, *or unless the employee is directed in his employment to proceed from one place to another place,* such transportation shall

not be the basis for a claim that an injury occurring during the course of such transportation is sustained in the course of employment.

1957 Tex.Gen.Laws, ch. 397, § 3, at 1192 [Tex.Rev.Civ.Stat.Ann. art. 8309, § 1b, since repealed] [hereinafter art. 8309, § 1b] (emphasis added).

After the presentation of the evidence, the district court submitted the following definition of "course and scope of employment," which tracked the pertinent requirements of the statute:

An injury occurring during the course of transportation is in the course of employment only if—

the employee is directed in his work to proceed from one place to another and the injury occurred while he was so traveling; or the employee is authorized, expressly or impliedly, by his employment contract to travel in the performance of his duties, and the injury occurred while he was so traveling.

Employers did not object to this instruction. However, Employers contended at trial that plaintiff was not entitled to recover workers' compensation benefits because of the "dual-purpose travel doctrine," which is contained in the second half of art. 8309, § 1b and provides:

Travel by an employee in the furtherance of the affairs or business of his employer shall not be the basis for a claim that an injury occurring during the course of such travel is sustained in the course of employment, if said travel is also in furtherance of personal or private affairs of the employee, unless the trip to the place of occurrence of said injury would have been made even had there been no personal or private affairs of the employee to be furthered by said trip, and unless said trip would not have been made had there been no affairs or business of the employer to be furthered by said trip.

Art. 8309, § 1b.

The trial court refused Employer's requested "dual-purpose travel" instruction. Employers objected to the omission of the instruction. The jury returned a verdict favorable to plaintiff. It is from the trial court's judgment on the verdict that Employers now appeals.

## DISCUSSION AND HOLDING

Employers assigns four points of error raising two basic issues for appellate review:

1. Points of error one and four contend that there was no evidence or insufficient evidence to support the jury's finding that the decedent was within the course and scope of his employment at the time of his death.

2. Points of error two and three contend that the court's charge improperly omitted an instruction on the "dual-purpose travel" provision contained in the workers' compensation law.

### 1. *Evidence*

In reviewing a "no evidence" challenge, we consider only the evidence and reasonable inferences drawn therefrom which, when viewed in their most favorable light, support the jury's finding. The appellate court must disregard all evidence and inferences to the contrary. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987); *Alm v. Aluminum Co. of America*, 717 S.W.2d 588, 593 (Tex.1986). Any probative evidence supporting the finding is sufficient to overrule the point of error. *See also* Calvert, *"No Evidence" and "Insufficient Evidence Points of Error"*, 38 Texas L.Rev. 361, 364 (1960); Powers and Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence"*, 69 Texas L.Rev. 515, 522 (1991).

We will sustain Employers' "insufficient evidence" point of error only if, after reviewing the entire record, the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (Tex.1986); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

Plaintiff introduced the testimony of Calvin Zanders to confirm that Zanders had assigned the delinquent file to decedent with the understanding that decedent

would work the file over the weekend following the reunion. Additionally, plaintiff introduced the testimony of Monty Magill, decedent's roommate, and Richard Prigmore, the host of the final reunion event, to confirm that decedent intended to work the delinquent account immediately following the reunion. Finally, both plaintiff and Prigmore recounted that decedent was unable to escort his mother back into Austin because of his intention to work a delinquent account for his employer.

Employers countered with testimony from Zanders' supervisor, Holly Sorenson. Sorenson testified that company procedures were not followed in assigning the delinquent file to decedent. Sorenson testified that decedent: (1) was not properly authorized to work the delinquent file; (2) could not perform field work except in a company vehicle (at the time of death, decedent was driving his own vehicle); and (3) was not dressed professionally and appropriately (decedent was wearing jogging shorts and a t-shirt when the accident occurred). Additionally, Sorenson testified that company policy prohibited Sunday work. Finally, she testified that a customer-service representative working a delinquent account was to leave a business card and a "green dragon" if the customer were not at home. A "green dragon" is a collection note normally left at a delinquent customer's door indicating that the service representative called at the customer's home and requesting a telephone call to the office. Employers also produced the delinquent customer's videotaped deposition in which the customer testified that, to the best of her knowledge, decedent had not come by her home.

The fatal automobile accident occurred on Highway 1431, between Marble Falls and Granite Shoals. From his physical location, the jury could have concluded that decedent was engaged in collection efforts for his employer at the time of his fatal accident.

Considering only the evidence favorable to the jury's finding, and disregarding all evidence to the contrary, we hold that there was some evidence upon which the jury could conclude, pursuant to the instructions and question contained in the court's charge, that decedent was within the course of his employment at the time of his fatal injury. Upon reviewing the entire record, we conclude that sufficient evidence exists to support the jury's finding. The jury's finding was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Therefore, Employers' points of error one and four are overruled.

### 2. *Dual–Purpose Travel Doctrine*

Employers argues that the trial court erred in failing to submit its requested instruction on the dual-purpose travel doctrine. Our resolution of this issue depends on our construction of the clause in art. 8309, § 1b, which refers to "the trip to the place of [the] occurrence of said injury." It is this clause that triggers the dual-purpose travel requirement.

Employers construes this clause to require the trier of fact to focus attention on the decedent's entire weekend, *i.e.*, the family reunion as well as the fatal trip from Horseshoe Bay to Marble Falls/Granite Shoals. Employers argues that, because decedent spent the first part of the weekend on personal matters (family reunion) and the last part of the weekend *allegedly* on business pursuits (collection of a delinquent account), the trial court erred in refusing to submit a dual-purpose travel instruction to the jury. Plaintiff, on the other hand, contends that we should construe this clause narrowly. A narrow construction would require the trier of fact to examine only the actual segment of the trip where the injury occurred. We agree with plaintiff's reading of the statute and conclude that the trial court properly rejected Employers' requested instruction.

■ This case is controlled by the supreme court's decision in *Johnson v. Pacific Employers Indemnity Company*, 439 S.W.2d 824 (Tex.1969), the leading case on construction of the dual-purpose travel doctrine. The plaintiff in *Johnson* was a member of a drilling crew. On most workdays he car pooled with his fellow workers

to the job site by a direct and convenient route of travel. However, on certain workdays, at the direction of his supervisor, he deviated from the usual route to pick up ice and water for the drilling crew. It was on one of the workdays when the plaintiff was on the deviated route of travel that he was involved in an automobile accident which resulted in his total and permanent disability.

The crucial issue in *Johnson* was whether the plaintiff was within the course and scope of his employment. The insurance carrier argued that the dual-purpose travel doctrine applied because plaintiff was engaged in a personal activity, *i.e.,* commuting to work, while at the same time he was furthering his employer's affairs by picking up the ice and water for use at the job site. *Johnson,* 439 S.W.2d at 826.

The court of civil appeals concluded that there was no evidence to sustain a favorable jury verdict that the plaintiff was within the course and scope of his employment since, as a matter of law, the dual-purpose travel doctrine barred recovery. *Johnson,* 439 S.W.2d at 827. The supreme court, in an opinion written by Chief Justice Calvert, disagreed and established the following rule of construction for the dual-purpose travel doctrine:

> It is not enough to invoke the statutory dual-purpose rule that the employee may have been injured during travel which was of benefit to third persons. Nor may it be invoked when injury occurs during the course of travel which is not in furtherance of the affairs or business of the employer. By the very language of the statute, the rule can only be invoked when injury is sustained during the course of travel which furthers *both* the affairs or business of the employer and the personal or private affairs of the employee.

*Id.* at 827 (Emphasis added).

In the instant cause, just as in *Johnson,* there is credible evidence to indicate that decedent's only reason for traveling on the deviated route on the day of his death was to carry out Zanders' direction to service a delinquent account. Just as in *Johnson,*

there is no evidence to indicate that decedent's personal or private affairs were furthered by taking the deviated route. To the contrary, the evidence supports the jury's conclusion that the *only* purpose of the fatal automobile trip to Granite Shoals was to service the account for Ford Credit.

An injury received while using the public streets is compensable when the employee has undertaken a special mission at the direction of the employer or is performing a service in furtherance of the employer's business with the express or implied approval of the employer. *American General Insurance Co. v. Coleman,* 157 Tex. 377, 303 S.W.2d 370, 375–76 (1957); *Vaughn v. Highlands Underwriters Insurance Co.,* 445 S.W.2d 234, 236–37 (Tex. Civ.App.1969, writ ref'd n.r.e.).

There is no evidence of probative force in the record to establish any personal benefit to decedent in taking the deviated route to Granite Shoals where he met his death. Rather, the only evidence of probative force in the record is that he made the deviated trip to perform a service in furtherance of his employer's business.

Therefore, based upon the controlling authority of *Johnson,* we conclude that the trial court did not err in failing to instruct on the dual-purpose travel doctrine and accordingly overrule Employers' points of error two and three.

The judgment of the trial court is affirmed.