**Roger HAVNER, et al., petitioner,**

v.

**E–Z MART STORES, INC., respondent.**

No. D–2771.

Supreme Court of Texas.

Feb. 3, 1993.

Robert R. Schwartz, Tyler, Coy Johnson, Sulphur Springs, for petitioner.

Alan D. Harrel, Texarkana, Michael A. Hatchell, Gregory D. Smith, Tyler, for respondent.

Writ of Error Denied, February 3, 1993.

GONZALEZ, Justice, concurring on denial of Application for Writ of Error.

I write to answer the dissent. There is nothing "extraordinary" about today's order. The court has in the past withdrawn orders granting writ of error prior to oral argument. *See, e.g., Williams v. City of Fort Worth*, 34 Tex.Sup.Ct.J. 8 (Oct. 10, 1990); *Cropper v. Caterpillar Tractor Co.*, 777 S.W.2d 709 (Tex.1989); *Cedillo v. Ewlen Enter., Inc.*, 756 S.W.2d 724 (Tex.1988). This action was taken because the application should never have been granted in the first place. The dissent's suggestion, that we at least hear oral argument before denying the writ as improvident, would gain the petitioners nothing. Since the constitution so clearly foreordains that the result remain the same, oral argument would needlessly give the petitioners false hope and cause the parties to incur additional attorney's fees.

To take jurisdiction of this case *again* is to second-guess the court of appeals' review of the factual sufficiency of the evidence. This would require us to continue to send the case back to the court of appeals until they "get it right," *i.e.*, until the court of appeals reaches a result in accord with our view of the evidence. This we must not and cannot do, for to do so would usurp the court of appeals' constitutional role.

The court of appeals discharged its duty as per our instructions. 825 S.W.2d 456, 462. It conducted a review of the factual sufficiency of the evidence, found it deficient, and remanded for a new trial. 832 S.W.2d 368, 374. Havner sought review *again* in this court and the dissent would once *again* remand this case to the court of appeals for a *third review* of the evidence.

For our court to do what the dissenting justices want us to do would require us to ignore constitutional limitations on our own jurisdiction: "the decision of said courts [of appeals] shall be conclusive on all questions of fact brought before them on appeal or error." TEX. CONST. art. V, § 6.

Just as a court of appeals must not merely substitute its judgment for that of the jury, our court must not second-guess the court of appeals' sufficiency review. As we observed shortly after *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986):

No one would argue that the constitutional right of trial by jury should or could be abrogated by this court, merely because the court reached the conclusion that too many juries were reaching clear-

ly wrong decisions. It is no different to suggest that we should or could restrict or abolish the courts of appeals' constitutional authority to review fact questions, merely because there are occasional opinions that reflect too little deference to the judgment of the jury. *See Pool*, 715 S.W.2d at 635 (discussing such "occasional" opinions). The right of trial by jury and appellate court review of fact questions have peacefully co-existed for almost one hundred and fifty years, and are thoroughly rooted in our constitution and judicial system. Aside from the inescapable fact that this court cannot amend the constitution, we are not prepared to sacrifice either for the benefit of the other.

*Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 652 (Tex.1988).

As to our duty to ensure that the lower courts employ the proper standard of review, I fully accept this duty. However, the court of appeals discharged its duty applying the proper standard of review under *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951), and *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986). What we should avoid is the yo-yo effect when a majority of the court keeps reversing the judgment of the court of appeals until it reaches a result that the majority approves. *See Lofton v. Texas Brine Corp.* 720 S.W.2d 804 (Tex.1986) (per curiam) (remand for second factual sufficiency review); *Lofton v. Texas Brine Corp.*, 777 S.W.2d 384 (Tex.1989) (remand for third factual sufficiency review). *See also* William Powers & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 Tex.L.Rev. 515, 533 (1991).

DOGGETT, Justice, dissenting to Order denying Application for Writ of Error as improvidently granted.

In an extraordinary move,[1] the majority withdraws our recent order of December 16, 1992 granting this application, improvidently granting a cause even before the parties have had the opportunity to present oral argument to the full court. This action is undertaken not once, but three times, regarding recently granted applications. *See also Finlay v. Federal Deposit Ins. Corp.*, 849 S.W.2d 344 (Tex.1993) (order of December 31, 1992 granting application withdrawn as "improvident"); *Cabrera v. Cedarapids, Inc.*, 847 S.W.2d 247 (Tex.1993) (order of December 31, 1992 granting application withdrawn as "improvident"). During this time, the law did not change, nor did the importance of the legal issues at stake diminish.

Remarkable as this may be, it surely comes as no surprise to those who have closely observed recent opinions of this court reflecting a growing tendency of the majority to overrule past decisional law.[2] Those who rely on Texas Supreme Court decisions as precedent do so increasingly at their peril. *See, e.g., Boyles v. Kerr*, 1992 WL 353277 (Tex.1992) (reversing jury verdict in favor of woman surreptitiously videotaped during sexual intercourse and overruling landmark Texas Supreme Court decision upon which she relied).

The history of this particular case underscores the unfairness of reversing the December determination that the application should be granted. Diana Havner was an overnight clerk at a store owned by E–Z Mart Stores, Inc. in Sulphur Springs. E–Z Mart, upon its recent acquisition of the shop, had dismantled all of the existing

1. None of the cases cited by Justice Gonzalez in defending today's wholly unjustified action, 846 S.W.2d at 286–287, provides a parallel precedent. Nor does his writing provide the slightest rationale for the improvident grants in *Cabrera v. Cedarapids* and *Finlay v. Federal Deposit Ins. Corp.*

2. *See, e.g., Walker v. Packer*, 827 S.W.2d 833, 846 (Tex.1992, orig. proceeding) (Doggett, J., dissenting) (noting majority's "mass execution of

precedent," encompassing "a dozen or more Texas Supreme Court cases and countless decisions of the courts of appeals"); *Carrollton–Farmers Branch Indep. Sch. Dist. v. Edgewood Indep. Sch. Dist.*, 826 S.W.2d 489, 538 (Tex.1992) (Doggett, J., dissenting) (discussing rejection by majority of its own decision issued less than one year previously); *Stewart Title Guaranty Co. v. Sterling*, 822 S.W.2d 1, 12 (Tex.1991) (Doggett, J., dissenting) (majority disregards recent precedent, looking instead to overruled case).

alarm systems[3] nor did it initiate any security measures at that location.[4] One morning, a police officer discovered the store unlocked, the cash register empty, and Havner missing, although her car was parked out front. Four days later, her badly mutilated body was found.

Havner's two daughters, her parents and her estate brought suit against E–Z Mart for damages suffered as a result of her death. The trial court rendered judgment based upon the jury's finding that the employer's failure to provide a safe place to work was a cause of Havner's abduction, rape and murder. After the court of appeals reversed and rendered a take nothing judgment, this court held there was, indeed, some evidence that the failure of E–Z Mart to take adequate security precautions was a cause of the death. 825 S.W.2d 456 (Tex.1992). We reversed and remanded to the court of appeals for its further consideration of points relating to insufficiency of the evidence. By holding the evidence of causation insufficient as failing to negate other possible causes of Havner's death,

that court again reversed the trial court's judgment. 832 S.W.2d 368. Justice Grant, in an articulate dissent carefully reviewing all of the evidence in the record, pointed out numerous conflicts between the court of appeals' most recent writing and our earlier decision, particularly in the manner of considering expert testimony. *Id.* at 375–79.

After careful consideration of the family's application for writ of error, in December this court granted eight points, all of which raise objections to the legal standards employed by the court of appeals.[5] 832 S.W.2d 368 (Tex.App.1992).

Now the majority tells this victim's family their cause is suddenly not worth hearing. I dissent.

GAMMAGE and SPECTOR, JJ., join in this dissenting opinion.

---

**3.** As this court previously stated:

> The prior owner of the Sulphur Springs store, Shop-a-Minute, had installed two security mechanisms: (1) a "panic button" alarm, set under the counter just below the cash register, and (2) a necklace alarm, which could be worn around the neck and under the employee's company smock. Designed to be activated unobtrusively, these devices could silently transmit a signal to an alarm unit in the back of the store which would, in turn, relay the call for help to the police station. Upon its acquisition, E–Z Mart disconnected this system, which could have been maintained for about $8.00 a month.

825 S.W.2d at 459. Additionally, the evidence at trial revealed that E–Z Mart had "install[ed] a telephone that permitted only incoming management calls but precluded outgoing emergency calls." *Id.*

**4.** Evidence at trial of E–Z Mart's disregard for employee safety included:

> At least two more reasonably priced mechanisms were commercially available, including an alarm "clip," triggered by removal of money placed within it from the cash register and a foot-activated "toebar" alarm, located beneath the cash register. Alarm, security and law enforcement experts testifying at trial stresses the importance of these types of systems both in deterring robbery and in avoiding employee injury.

825 S.W.2d at 459.

**5.** While reluctantly recognizing our duty to ensure that the lower courts employ the proper standard of review, Justice Gonzalez would shirk that responsibility here: "To take jurisdiction of this case again," he announces, "is to second-guess the court of appeals' review of the factual sufficiency of the evidence." 846 S.W.2d at 286. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951), established that this court may take jurisdiction, notwithstanding the finality of the judgments of the courts of appeals on fact questions, to determine if a correct legal standard had been applied by the intermediate courts. In *Pool v. Ford Motor Co.,* 715 S.W.2d 629 (Tex.1986), we delineated how courts of appeals should perform factual insufficiency reviews to facilitate our determination whether the proper legal standard had not just been recited, but also applied. In Justice Gonzalez's view, however, these cases announce a standard that this court will not enforce—here the result is "constitutionally foreordained," 846 S.W.2d at 286, and the Havners' quest for justice in this court is dismissed as nothing but "false hopes." *Id.* Nothing in the constitution "foreordained" this wrong; only today's improvident action dashes the hopes for justice of the Havner family. Further, Justice Gonzalez's feigned concern for avoiding a "yo-yo effect," *id.* at 287, is contradicted by today's abrupt retraction of the right of this family to be heard in oral argument.