**JAFFE AIRCRAFT CORPORATION and Jafftech Industries, Inc.**

v.

**Mary CARR, Individually and as Representative of the Estate of Nathan Henry Carr; Henry and Mary M. Johnson Carr, Respondents.**

No. 3329.

Supreme Court of Texas.

Argued Dec. 1, 1993.
Decided Dec. 8, 1993.

John H. Martin, Deborah G. Hankinson, Beverly Ray Burlingame, Dallas, Kenneth L. Fuller, San Antonio, for petitioners.

Charles Nicholson, Warren N. Weir, Scott Roberts, San Antonio, Risley C. Triche, Napoleonville, LA, Pat Maloney, Sr., San Antonio, for respondents.

DOGGETT, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice and HIGHTOWER, HECHT, CORNYN, GAMMAGE, ENOCH and SPECTOR, Justices, join.

In this appeal we determine that the Court of Appeals applied an incorrect legal standard in its review of the factual sufficiency of the evidence supporting a jury finding.

This action arises from the death of Nathan Carr, a passenger in a prototype aircraft, which crashed during a demonstration flight. Mary Carr, on behalf of her family and her deceased husband's estate, brought suit against the owner, Jaffe Aircraft Corporation and Jafftech Industries (Jaffe), who had purchased the prototype with the intention of developing it into a pilot-trainer for military use.

It is undisputed that immediately prior to the crash the airplane had been traveling at less than its maximum rated speed on a straight flight path when the right wing separated as the result of metal fatigue. The only contested issue at trial was the cause of this fatigue. Carr claimed negligence by Jaffe's pilot [1] and vice-president, Forest Molberg, who had allegedly stressed the wing beyond its designated operational limits. Both Carr and Molberg were killed in the crash. Jaffe filed a general denial. The trial court entered a take nothing judgment based on the jury's answer to the question: "Did the negligence of (Jaffe) proximately cause the occurrence in question?" The Court of Appeals reversed on grounds that the jury's failure to respond affirmatively to this query "was so against the great weight and preponderance of the evidence as to be wrong and unjust and remanded the cause for a new trial." 863 S.W.2d 71, 75 (1992).

Central to our system of justice is reliance upon the factfinder to resolve disputed issues of fact. In Texas this usually means that a jury, composed of a cross section of a local community, will be entrusted with the vital responsibility to act as "the sole judges of the credibility of the witnesses and the weight to be given their testimony." TEX.R.CIV.P. 226a(III).

While it may review the factual sufficiency of the evidence supporting a jury finding to prevent a manifestly unjust result, a court of appeals may not set aside such a finding merely because the judges believe that they would have reached a different and more reasonable result had they been jurors. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 634 (Tex.1986). To ensure that courts of appeals do not simply substitute themselves as factfinders for properly constituted juries, we have required that these courts

> when reversing on insufficiency grounds, should, in their opinions, detail the evidence *relevant* to the issue in consideration and clearly state why the jury's finding is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust; why it shocks the conscience; or clearly demonstrates bias. Further, those courts, in their opinions, should state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict.

Id. at 635 (emphasis added). *See also Lofton v. Texas Brine Corp.*, 777 S.W.2d 384 (Tex. 1989). In *Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 649–53 (Tex.1988), we held that this requirement applies as fully to a court of appeals, which is reviewing the evidence in support of a jury's answer of "no" to a finding as it does when the answer is "yes."

---

1. Carr's separate claim against the manufacturer was dismissed on summary judgment.

Factual sufficiency review in our intermediate courts is not a one way street. Our law must be as fair to a defendant challenging an appellate reversal of a negative jury finding as it is to a plaintiff who challenges appellate reversal of an affirmative jury finding. The court of appeals in the instant case has not satisfied this standard as reflected in our decisions.

■ While properly detailing evidence that Jaffe's vice-president Molberg had routinely flown the airplane over the recommended flying speed and performed high speed aerobatics for which the plane was ill-suited, the court of appeals failed to discuss thoroughly the contrary evidence supportive of the jury's negative finding on the issues of causation and negligence. Never mentioned is some of the testimony of the manufacturer, Ed Swearingen, to whom Molberg purportedly indicated that he had not exceeded the recommended flying speed and that the only aerobatics he performed were gentle ones. Persons who had previously flown with Molberg in the prototype also testified that he was an able pilot and had not engaged in any reckless behavior. Additional witnesses attested to Molberg's piloting habits and reputation as a safe and conscientious pilot, who recognized aircraft design limitations. None of this evidence is addressed by the court of appeals in its opinion, which contains only a single reference to evidence supporting the verdict.[2]

Swearingen further suggested that occasional performance of aerobatic maneuvers would have been neither negligent nor would they have produced sufficient metal fatigue to pose a probable cause of wing failure. There was also testimony that a test pilot of a potential military trainer has a duty to determine whether the operational limits designated by the manufacturer are realistic.

Having omitted any mention of the above evidence as well as any explanation of how a jury finding that considered it "is so against the great weight and preponderance as to be manifestly unjust," the court of appeals has erred. *Id.*

While this Court has a responsibility to assure that the intermediate appellate courts properly follow applicable legal standards, we lack jurisdiction ourselves to determine the factual sufficiency of evidence supporting a jury verdict. TEX.CONST. art. V, § 6. Our holding today is therefore limited to requiring that the court of appeals apply the correct legal standard in its review of the evidence;[3] we reverse that court's judgment and remand this cause to it for further consideration in accordance with this opinion.

GONZALEZ, Justice, concurring.

I join in the Court's opinion and judgment but I write separately to once again caution about the danger of our misuse of *Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986) to circumvent our limited authority to review a factual insufficiency holding. *See Lofton v. Texas Brine Corp.*, 777 S.W.2d 384, 387 (Tex. 1989) (Gonzalez, J., dissenting). The standard articulated by this Court in *Pool*, although legally justified, is susceptible to abuse unless exercised with the utmost caution and restraint. This Court has no constitutional authority to review a determination by the court of appeals that a jury finding is either supported by factually insufficient evidence or is against the great weight and preponderance of the evidence. Our review of such a holding is limited to determining that it was lawfully made, not whether it was decided correctly. On rare occasions, I believe that our writings have exceeded this narrow authority. *See Lofton v. Texas Brine Corp.*, 720 S.W.2d 804 (Tex.1986) (per cu-

---

**2.** The court of appeals does dismiss a "reference in the record attributing the metal fatigue to a possible pre-existing crack in the wing [as] insignificant compared to the overwhelming testimony concerning pilot abuse as the cause of the metal fatigue." 863 S.W.2d at 74.

**3.** In his concurrence, Justice Gonzalez quite properly cites this case as "a textbook example of the appropriate exercise of our responsibility to"

correct a legal error. 867 S.W.2d at 30. His brief writing could, however, be easily misunderstood regarding how this particular case was accepted for his "textbook." The Texas Constitution, not a concession by counsel, is determinative in today's opinion. While this Court should "exercise [its] power sparingly," *id.*, we must also act consistently to discourage any court of appeals from usurping the jury's decisionmaking in violation of the constitutional standards articulated in *Pool*, 715 S.W.2d at 633–35.

riam) (remand for second factual sufficiency review); *Lofton*, 777 S.W.2d 384 (remand for third factual sufficiency review); *See also* William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and Insufficient Evidence,"* 69 Tex.L.Rev. 515, 533 (1991).

This case, however, presents a textbook example of the appropriate exercise of our responsibility to direct the court of appeals, when reversing on insufficiency grounds, to "detail the evidence relevant to the issue in consideration and clearly state why the jury's finding is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust; why it shocks the conscience; or clearly demonstrates bias." *Pool*, 715 S.W.2d at 635. At the close of the respondents' oral argument before this Court, the following exchange occurred:

> COUNSEL: I know that there is one other aspect of the testimony that Justice Peeples referred to. That is the one that comes to mind. He also referred to the ... you are right, your honor, that Mr. Swearingen had been told by Mr. Molberg that he [Mr. Molberg] had not exceeded the red line. The significance of that is that Mr. Swearingen had designed the plane for specific speed capabilities and there was testimony that the capabilities of the plane' had been exceeded by Mr. Molberg by over 100 mph.
>
> JUSTICE HECHT: But then there is also testimony that he didn't? And that is not in the court of appeals' opinion. Would that be material?
>
> COUNSEL: I would think that would be significant testimony, your honor. It is a statement of a party, Mr. Molberg....
>
> JUSTICE HECHT: So then you do concede it has to go back?
>
> COUNSEL: Well, I hate to put myself in that position, judge. But I would have to....
>
> JUSTICE HECHT: It does seem inescapable. Is that right?
>
> COUNSEL: If that testimony, your honor, was substantial testimony, I think that under any test this court here would have to send the case back with the direction to the court of appeals to consider that specific testimony.
>
> JUSTICE HECHT: Do you think it was substantial?
>
> COUNSEL: I will have to concede ... that in this court I would consider it to be substantial testimony, your honor. In the court of appeals, in light of the fact that there were only two experts who testified, I think that the argument would be that that would not be substantially sufficient enough to sustain the jury verdict. But that it is something the court of appeals should consider. I concede that your honor.

The respondents' attorney made no argument against the applicability of *Pool;* to the contrary, he endorsed its precepts. His responses to the questions posed amount essentially to a confession of error, and virtually compel our judgment in this case.

With little effort, however, this Court could, in almost any case, discover some fact in the record which is not set forth in the opinion below. By labeling that fact as "material," we could reverse the judgment of the court of appeals and remand for further proceedings. The respective jurisdictions of the courts of appeals and of this Court are best preserved when we exercise this power sparingly. With that caveat, I join in the opinion of the Court and in the judgment.